## HAYES *v.* THE STATE.

No. 15147.   MAY 9, 1945.

*J. O. Ewing* and *Wesley R. Asinof,* for plaintiff in error.

*T. Grady Head, attorney-general, E. E. Andrews, solicitor-general, Reuben Garland, Durwood T. Pye,* and *Claude Shaw, assistant attorney-general,* contra.

GRICE, Justice.   A lady who resided in one of the suburbs of the City of Atlanta and who was president of the Fulton County Council of the Parent Teachers Association, had an engagement in downtown Atlanta in connection with the business of that organization.   Returning home in her car, she discovered that the brakes thereon would not work.   Desiring to stay out of the traffic as much as possible, she turned into a side street.   Seeking to stop the car, she headed it directly into a big tree and it edged up to the tree and stopped.   A man came directly from another car, and, addressing the lady, asked her if she was in trouble, and her reply was, "I don't have any brakes."   The man then said that he knew a fellow at a filling station and he would take the car there and get the brakes fixed.   She replied that she did not wish to take it to a stranger who had not theretofore worked on the car.   She inquired how far it was to Pryor Street, and the man said, "Not far, just over the hill."   She asked him how much he would charge to drive it over there, and he said a dollar.   She agreed to pay him the dollar, and did so.   He got under the wheel and commenced to drive the car.   When they reached the point where Pryor Road runs off from Pryor Street, she told the man, "You can stop. I think I can manage it."   He replied, "You have one very bad place, and I will get you by that."   He then drove the car to a little road, called Manford Road.   In a few moments he slammed the car into second gear, and the car went fast.   The lady screamed, and he grabbed her at the back of the neck.   The car stopped.   She got the door open and jumped out.   The man got out.   He came to the side of the car out of which she had jumped and dragged her into bushes on the side of this little road.   She screamed. He cursed her, and she fought him, trying to beat him off.   He beat her severely on the face and broke her nose.   He threw her on the ground and kept beating her in the face.   When she fell, he fell on the ground too, and on top of her.   She was beaten into unconsciousness.   She testified to his robbery of the articles men-

tioned in the indictment, to wit, a pocketbook, a ration card, and money. The place where the robbery occurred was in Fulton County. She was dragged by him to a vacant lot on which there were trees, bushes, and high grass. She testified that the last thing she remembered was being on the ground and this man on top of her; that she lost consciousness, and the next thing she remembered was when she was at Grady Hospital. She identified the defendant as her assailant. The man had on greasy overalls. She was in bed, as the result of the violence, from the 7th until the 18th of September. The accused tore her dress, the underslip she had on, and her panties. Some days later, when the defendant was arrested at his home, the officers found a pair of greasy overalls, which the witness said was his. Various witnesses testified to numerous bruises and cuts on the lady, ranging all the way from her head almost to her feet. The doctor attending her testified that she was bruised all over the face, both lips, her head cut, her eyes blackened, her body and shoulders bruised, and her legs, from her knees up to her thighs, had numerous bruises on them. Witnesses testified that when she was examined in the hospital there was grease on the inside of both legs. The dress she wore that day also had grease on it. A witness testified that she had blood and dirty grease on the back of her neck, on her dress, on her face, and some of that grease near the crotch of her legs, inside the legs. The accused admitted to several people that he had beaten her and had taken her pocketbook.

The foregoing recital, taken from the record, must be borne in mind when passing upon the only point to be decided, to wit, whether or not it was erroneous to refuse a mistrial, as complained of in the motion for new trial. The witness to whom the question was addressed was the city detective, who was endeavoring to find the guilty party. For all that appears, he may have investigated the charge of attempted rape as well as of robbery. The facts above narrated do more than merely suggest that a rape or an attempted rape was committed along with the robbery by force. All that counsel for the State did was to inquire of the witness "if he investigated the case of robbery and attempted rape." This was no statement on the part of counsel of a prejudicial matter not in evidence. He did not go out of the record for the purpose of unduly inflaming the minds of the jury. It was merely a pre-

liminary question leading up to other inquiries of the witness as to what he found at the scene of the crime, after having received a report of that occurrence and a description of the alleged robbery from the victim, with confessions by the accused to this officer and to others. There was no suggestion in the question by the State's counsel that there was pending against the accused another indictment. An intimation that there was such other indictment came from counsel for the accused, counsel stating at the time he objected to the question that, "We elected to sever these indictments, and the State elected to travel on the robbery indictment, and the solicitor has brought out the question of attempted rape, and therefore we insist on a mistrial." The court in overruling the motion for a mistrial ruled out the statement made by the solicitor, "having any reference to the case against him for rape or attempted rape. I don't think the statement should have been made. We are trying this man for robbery, and I want the jury to eliminate any charge except this charge of robbery from your consideration, just leave it out entirely. The evidence will be confined to such only as relates to the indictment on this charge of robbery." In the very first sentence of the charge of the court to the jury, they were instructed that, "This defendant, Henry Hayes, is on trial now only under the allegations and charges made in this indictment, and you will not consider any case against him for the purpose of making a verdict, except the one as set forth in this indictment."

In view of the above, taking into consideration the whole environment of the trial, the precautionary remark of the judge, his ruling out the question, it is a little difficult to see how the accused can justly complain of the court's action in refusing to grant a mistrial. There is no merit in this special ground of the motion. And in view of the express abandonment by counsel of the general grounds of the motion, and their implied abandonment of all the special grounds except the one hereinbefore dealt with, there is no occasion to review in detail the evidence, consisting in part, as it did, of the uncontradicted testimony of the victim, her positive identification of the accused, of his several confessions, and all the surrounding corroborating circumstances. Nothing remains to be done but to affirm the judgment denying his motion for new trial.

*Judgment affirmed. All the Justices concur.*